In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 19-2361

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERIA L. ANDERSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:17-cr-00158-SEB-TAB-8 — **Sarah Evans Barker**, *Judge.*

_____

ARGUED OCTOBER 26, 2020 — DECIDED FEBRUARY 19, 2021

_____

Before EASTERBROOK, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* For years, Teria Anderson sold large
quantities of heroin to drug dealers and end users in the Indi-
anapolis area. A jury eventually found Anderson guilty of two
drug charges—distributing a controlled substance and con-
spiracy to distribute. The jury also found that Anderson had
caused "serious bodily injury" to an end user who overdosed
on her drugs; that finding exposed her to an enhanced

sentence. In the end, however, the court imposed a below-guidelines term of 300 months' imprisonment.

On appeal, Anderson's primary arguments take issue with her distribution conviction and the applicability of the serious-bodily-injury enhancement. She also contends that the court erred when it applied a two-level leadership enhancement to her guidelines range. She urges that her distribution conviction should be vacated because it was based on an aiding-and-abetting theory of liability that was unsupported by the evidence. And if we vacate her distribution conviction, Anderson continues, we must also vacate her serious-bodily-injury enhancement, because it is impossible to tell from the jury's verdict whether that enhancement applied only to her flawed distribution conviction, only to her unchallenged conspiracy conviction, or to both. We agree with Anderson on both grounds. We therefore vacate her distribution conviction and her sentence and remand to the district court for resentencing on the conspiracy conviction without the serious-bodily-injury enhancement.

**I**

Anderson was active in Indianapolis's illegal drug business for several years. In 2016 she encouraged a friend, Michael Sublett, to join her in selling heroin. Sublett agreed and the two settled into a pattern: Anderson would furnish between 100 and 200 grams of heroin to Sublett once or twice a month; Sublett would sell the drugs; and he then would pay Anderson back. In other words, most of these transactions involved "fronting." Occasionally Sublett also stored large quantities of heroin (500 to 600 grams) for Anderson, sometimes for weeks at a time.

After buying the drugs, Sublett cut them with sleeping-aid medication to increase the total amount available for sale. To distribute the heroin, Sublett primarily used two retail-level sellers, one of whom was Frankie Ray. Ray typically took between 100 and 200 grams per transaction. Sublett fronted heroin to Ray at least once. In May 2017, Anderson provided Sublett with an orange-tannish colored heroin that Sublett nicknamed "Kansas City." Sublett used Ray to distribute the new product.

Two events are particularly relevant to this appeal. First, on May 30, 2017, Ray sold heroin to one of his regular retail customers, Ian Buchanan. The next day, Buchanan locked himself in his bathroom, overdosed, and temporarily stopped breathing. Paramedics revived Buchanan using Narcan and then took him to the hospital. After he was released the next day, he called Ray and told Ray that he had overdosed on the Kansas City heroin. Ray replied, "That Kansas City smack ain't no joke, huh?" Buchanan confirmed, "Naw, man, that sh*t don't f**k around, bro'."

The second event occurred on June 29, 2017. That week, Anderson left Indianapolis to go on vacation. Before she departed, she arranged for her uncle, whom she called "Preacher," to supply Sublett with heroin during her absence. The day of the handoff, Anderson instructed Sublett to go to Preacher's house to pick up 200 grams of heroin. They discussed logistics on the phone: Sublett told Anderson to tell Preacher that he would arrive in ten minutes in a white truck. Sublett called Anderson again when he arrived. Anderson confirmed that she was going to tell Preacher to come out to meet Sublett. Preacher's phone was off, however, and so Anderson instead instructed Sublett that he was "gonna have to

go up" to the house. Sublett did so, obtained the drugs from Preacher, and then called Anderson to confirm that he had completed the pickup.

Anderson was arrested on July 10, 2017. On August 9, 2017, a grand jury indicted Sublett, Ray, and five other defendants on eight counts of distributing, possessing, and conspiring to distribute heroin. A superseding indictment later added Anderson to the conspiracy count and one distribution count. (She was also charged with and convicted of a third offense, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). This count was later dismissed when it came to light after trial that Anderson did not have a prior felony conviction, and so we disregard it here.)

Count One of the superseding indictment charged Anderson, Sublett, Ray, and the other defendants with conspiring to distribute 1,000 grams or more of heroin, in violation of 21 U.S.C. § 846. Count Two charged Anderson with aiding and abetting the distribution of heroin that occurred on May 30, 2017—that is, the sale to Buchanan that resulted in his overdose—in violation of 21 U.S.C. § 841(a)(1). The indictment also included a sentencing enhancement for the offenses charged in Counts One and Two based on Buchanan's suffering "serious bodily injury" from his overdose. See 21 U.S.C. § 841(b)(1)(A). Anderson's co-defendants all pleaded guilty.

Anderson went to trial and was convicted on both charges. For the serious-bodily-injury enhancement, the verdict form asked the jurors whether, "[w]ith respect to Count One, Count Two, or both … the government has proven beyond a reasonable doubt Ian Buchanan suffered serious bodily injury and that the serious bodily injury … resulted from the use of

heroin distributed by Defendant Teria Anderson." The jury responded: "Yes."

At sentencing, the district court determined that Anderson's total offense level was 42 and her criminal history category was II, resulting in a guidelines range of 360 months to life. That range was influenced both by the serious-bodily-injury finding and by the judge's decision to apply a two-level "leadership" enhancement under U.S.S.G. § 3B1.1(c) to her offense level, based on her coordination of the June 29 drug pickup between Preacher and Sublett. As we noted, the judge ultimately selected a below-guidelines sentence of 300 months for her. This appeal followed.

## II

### A

Anderson first challenges the sufficiency of the evidence to support her conviction on Count Two, which charged her with distributing heroin to Ian Buchanan on May 30, 2017. In a sufficiency-of-the-evidence challenge after a jury verdict, we review the evidence presented at trial in the light most favorable to the government and draw all reasonable inferences in its favor. *United States v. Grayson Enters., Inc.*, 950 F.3d 386, 405 (7th Cir. 2020). We will overturn a conviction only if, after reviewing the record in this light, we determine that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* We have described this burden as "nearly insurmountable." *United States v. Faulkner*, 885 F.3d 488, 492 (7th Cir. 2018). But the word is "nearly," not "completely," and this case illustrates one way in which a defendant can prevail.

The record contains no evidence that Anderson herself distributed heroin to Buchanan on May 30, nor was that the government's theory. Instead, it relied on an aiding-and-abetting theory to link Anderson to the substantive offense. A person who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense "is punishable as a principal." 18 U.S.C. § 2(a). To be liable under section 2(a), a person must (1) take an affirmative act in furtherance of the offense with (2) the intent of facilitating the offense's commission. *Rosemond v. United States*, 572 U.S. 65, 71 (2014).

At trial, the government essentially argued that anyone in a drug distribution chain could qualify for aiding-and-abetting liability. Thus, it reasoned, Anderson was liable for the May 30 distribution because she sold the heroin to Sublett, who then sold it to Ray, who finally sold it to Buchanan.

In so arguing, the government erred. We find instructive Judge Learned Hand's opinion in *United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938), which has long been endorsed as an accurate explication of federal aiding-and-abetting liability. See *Rosemond*, 572 U.S. at 70; *United States v. Pino-Perez*, 870 F.2d 1230, 1235 (7th Cir. 1989) (en banc).

*Peoni* held that where *A* sells contraband to *B*, and *B* sells the same item to *C*, *A* is not an accessory to crimes committed by *C* solely by virtue of her sale to *B*. This is true even if *A* knows that *B* is likely to sell the contraband to some other (unknown) guilty possessor. To be liable for *C*'s substantive offense on an aiding-and-abetting theory, *A* must "associate" herself with *C*'s offense and "participate in it as something that [s]he wishes to bring about." *Peoni*, 100 F.2d at 402. In other words, *A* must exhibit a "purposive attitude" toward *C*'s specific offense. *Id.* Where *A* sells contraband to *B* and

receives money in return, it is "of no moment" to *A* whether *B* uses the contraband himself or passes it on to another. *A*'s "connection with the business" ends with the completed sale. *Id. A* might be an accessory to *B*'s crime, but without more to demonstrate an association with *C*'s offense, she is not an accessory to *C. Id.* at 403. Judge Hand might as well have been talking about the case before us: Anderson is *A*, Sublett is *B*, and Ray is *C*.

The offense charged in the superseding indictment was Ray's distribution of heroin to Buchanan on May 30. To show that Anderson is guilty under an aiding-and-abetting theory, the government had to prove that she "affirmative[ly] act[ed] in furtherance of" *Ray*'s sale to Buchanan and intended to facilitate the commission of that sale. *Rosemond*, 572 U.S. at 71. The record here supports neither proposition. There is no evidence that Anderson knew Ray or Buchanan, knew that their transaction occurred, or even cared whether it occurred. "[W]here the relationship between the defendant's acts and the ultimate crime for which [s]he is charged is as attenuated as it is" here, we cannot sustain a finding of guilt based on an aiding-and-abetting theory absent "some showing of specific intent to aid in, or specific knowledge of, the crime charged." *United States v. Greer*, 467 F.2d 1064, 1069 (7th Cir. 1972). None of that appears in this record.

Anderson's interest in the heroin she sold to Sublett extended only up to the point when Sublett paid her—no further. Sublett could have used Anderson's heroin for himself, or he could have sold it to another drug dealer or end user. Anderson had no stake in what Sublett did next. And although the government presented evidence that Anderson fronted heroin to Sublett, there was no evidence that

Anderson fronted anything to Ray, nor even whether she fronted to Sublett the particular batch of heroin that Ray later sold to Buchanan on May 30. We can assume that the record supported a finding that Anderson conspired with Sublett and aided and abetted Sublett's drug-distribution activities, given the extensive fronting and mutual support between the two. But there is no evidence from which a rational trier of fact could conclude that Anderson aided and abetted the May 30 transaction between Ray and Buchanan. We therefore vacate Anderson's sentence on Count Two.

B

Anderson contends that if we reverse her distribution conviction, we logically must vacate her entire sentence and remand for resentencing without the serious-bodily-injury enhancement. The problem is, she argues, that the verdict form failed to make clear to which conviction the enhancement applied: Conspiracy? Distribution? Both? The answer to that question matters. At stake is whether Anderson will be subject to a resentencing range of 10 years to life on her basic conspiracy conviction, or a range of 20 years to life on the aggravated offense of conspiracy resulting in serious bodily injury.

Whether a drug offense results in serious bodily injury is an element of an aggravated offense under 21 U.S.C. § 841(b)(1)(A) and so must be found beyond a reasonable doubt by a unanimous jury. *Burrage v. United States*, 571 U.S. 204, 210 (2014); *Richardson v. United States*, 526 U.S. 813, 817 (1999). Normally, when a verdict form delineates distinct verdicts for each offense, it is easy to see what the jury found unanimously. When, however, a jury issues a general verdict on a duplicitous count or enhancement—*i.e.*, one that refers to multiple underlying offenses—a risk arises that the verdict

"conceals a finding of guilty as to one crime and a finding of not guilty as to another." *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). The problem is acute when one of the underlying offenses is later found legally insufficient on appeal.

We have just such a case here. The jury issued a general verdict on the serious-bodily-injury enhancement. The verdict form read as follows:

> With respect to Count One, Count Two, *or* both, we the jury, find that the government has proven beyond a reasonable doubt Ian Buchanan suffered serious bodily injury and that the serious bodily injury suffered by Buchanan resulted from the use of heroin distributed by Defendant Teria Anderson. (Emphasis added.)

As this verdict is worded—"Count One, Count Two, or both"—we have no way of discerning whether the jury unanimously found that Buchanan's injury resulted from Anderson's conspiracy conviction (Count One), her (now-vacated) distribution conviction (Count Two), or both of them. Any of those outcomes is possible on this record. For example, the jury might have found Anderson guilty of conspiracy based on events that had no connection to Buchanan and thus have connected Buchanan's serious bodily harm only to the distribution offense. Or the jury might have found that but for the conspiracy, Anderson's heroin would not have caused Buchanan's serious bodily injury, no matter how Buchanan wound up with her product. Or it might have found the necessary link for both the conspiracy and the distribution counts. We simply don't know. Nor did the judge's verbal jury instructions add any clarity. The judge repeatedly instructed the jury to find the enhancement

applicable if serious bodily injury resulted from *either* "Count One *or* Count Two." We therefore find that the jury's verdict concerning the serious-bodily-injury enhancement was ambiguous. This does not strike us as a close call.

Anderson did not object to the verdict form in the district court. We thus would normally review this point only for plain error. Here, however, there is an additional consideration: the government has not argued in this court that Anderson's (and its own, and the court's) failure to spot this problem caused Anderson to forfeit it. The government has thus forfeited whatever benefit it may have reaped from Anderson's forfeiture. See *United States v. Kimberlin*, 781 F.2d 1247, 1252 n.2 (7th Cir. 1985). To the extent it matters, we add that in our view the ambiguity in the form was a plain error that violated Anderson's substantial right to a unanimous jury verdict. See, *e.g.*, *United States v. Lapier*, 796 F.3d 1090, 1098 (9th Cir. 2015).

At oral argument, the government conceded that "if Count Two is vacated, the case should be remanded for resentencing … precisely because of th[e] ambiguity in the jury verdict." Oral Arg. at 25:21–32. This constitutes a waiver on its part of any other relief that might have been available. See *United States v. Cunningham*, 405 F.3d 497, 504 (7th Cir. 2005). Accordingly, we vacate Anderson's entire sentence and remand to the district court for resentencing.

Our conclusion is not undermined by the fact that the jury might have concluded, if given the chance, that whether viewed through the lens of conspiracy in Count One or the lens of distribution in Count Two, Anderson caused serious bodily injury. We offer no opinion on that point. This is not a sufficiency-of-the-evidence appeal. Instead, we face an

analytically prior question: whether, as a matter of historical fact, the jury unanimously found an element at all (in a form that is available to us). *Richardson*, 526 U.S. at 817; *cf. Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993). It did not. Since we cannot reconvene the jury to probe its thinking further, on remand the district judge must sentence Anderson only for the surviving conspiracy conviction, without the enhancement for serious bodily injury.

Nor do we need to delve into Anderson's contention that the serious-bodily-injury enhancement is independently objectionable on hearsay grounds. We note only that this was by no means a frivolous argument. On the one hand, the government had relied on out-of-court statements that Buchanan made about the source of the heroin that led to his overdose. The government relied on the co-conspirator exception to the hearsay rule, but it now concedes that there was no proof that Buchanan and Anderson were in a conspiracy together. It also contends that Buchanan's statements provide context for Ray's statements, and that Ray was a co-conspirator. But Ray's statements prove nothing. On the other hand, Anderson failed to object on hearsay grounds to this line of evidence, and so we would be required to evaluate this argument only for plain error. We think it best to leave this matter alone, since it does not affect the outcome of the appeal.

C

Anderson's final argument is that the district court erred when, in the course of computing the advisory guidelines offense level, it applied the two-level leadership enhancement based on Anderson's role in the June 29 drug handoff between Preacher and Sublett. See U.S.S.G. § 3B1.1.

Section 3B1.1 sets forth a three-tiered enhancement scheme for a defendant who plays an aggravating role in an offense:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. At Anderson's sentencing, the probation office recommended a three-level enhancement, but the court ruled that only a two-level adjustment was proper.

The purpose of the enhancement is to divide participants according to their "relative culpability … in the criminal enterprise." *United States v. Weaver*, 716 F.3d 439, 442 (7th Cir. 2013). The application note to section 3B1.1 offers seven factors that are relevant to the question whether a leadership enhancement is appropriate: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control or authority exercised over others. U.S.S.G. § 3B1.1 application note 4. A participant in a criminal enterprise

qualifies as a "supervisor" or "manager" if she "tells people what to do and determines whether they've done it." *United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012). In addition, for the enhancement to apply, there must be "ongoing supervision, not a one-off request from one equal to another during the course of the criminal activity." *Weaver*, 716 F.3d at 444.

Whether viewed as a factual matter, calling for clearly erroneous review, or a legal interpretation, calling for *de novo* review, the district court's decision was appropriate. Although the June 29 pickup was a single transaction, we have explained that singular events are not categorically excluded from qualifying for the section 3B1.1 enhancement. *United States v. Collins*, 877 F.3d 362, 367 (7th Cir. 2017). We agree with the government that Anderson's direction of the events of June 29 exceeded the degree of control and coordination in one-time transactions where we have found the enhancement improper. See, *e.g.*, *United States v. Colon*, 919 F.3d 510, 517–19 (7th Cir. 2019) (collecting cases). Anderson prearranged logistics with Preacher. Then, throughout the June 29 pickup, she maintained near-constant contact with Sublett, providing step-by-step instructions for obtaining the drugs. After delivery, Sublett called Anderson to confirm receipt.

This adds up to more than a mere referral "from one equal to another." *Weaver*, 716 F.3d at 444. Anderson directed and coordinated the entire delivery; Preacher and Sublett exercised very little discretion over the manner in which the offense unfolded. For the purposes of section 3B1.1, "[o]rchestrating or coordinating activities performed by others makes a particular defendant a manager or supervisor." *United States v. Martinez*, 520 F.3d 749, 752 (7th Cir. 2008). Thus, the district

court did not err in finding the two-level enhancement applicable.

* * *

Anderson's conviction on Count Two and her sentencing enhancement for serious bodily injury are VACATED and the case is REMANDED for resentencing in accordance with this opinion.