NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2021
Decided August 23, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2619

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 18-40011-001 |
| OMAR GUTIERREZ-VALLE, *Defendant-Appellant.* | Sara Darrow, *Chief Judge.* |

**O R D E R**

A jury found Omar Gutierrez-Valle guilty of possessing and conspiring to distribute drugs after law enforcement officers caught him and another man receiving cocaine and heroin from a truck driver. The district court sentenced Gutierrez-Valle to 121 months in prison, at the bottom of the range the district court calculated under the Sentencing Guidelines. The total offense level included a two-level enhancement for acting as an "organizer, leader, manager, or supervisor" of the deal, *see* U.S.S.G.

§ 3B1.1(c), which Gutierrez-Valle challenges on appeal. The judge's finding was not clearly erroneous, so we affirm.

Gutierrez-Valle was a member of a drug distribution network led by Ivan Reyes-Ochoa. Reyes-Ochoa also recruited Jose Gandarilla-Ayala, who owed him for help illegally entering the United States from Mexico, and Alejandro Martinez, a truck driver. Reyes-Ochoa gave a duffle bag containing ten kilograms of cocaine and one kilogram of heroin to Martinez, who drove it across the country to deliver it to Gutierrez-Valle and Gandarilla-Ayala outside Chicago on February 26, 2017. But law enforcement stopped Martinez en route, discovered the drugs, and persuaded him to cooperate. The three men met at a truck stop to make the exchange and, the moment Martinez placed the drugs in Gutierrez-Valle's car, agents arrested them all.

All three men were charged with possessing and conspiring to distribute heroin and cocaine. *See* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). Gutierrez-Valle went to trial, while both Gandarilla-Ayala and Martinez entered plea agreements with the government and testified against him.

At the trial, Gandarilla-Ayala testified about his interactions with Gutierrez-Valle before the doomed deal. In his capacity as Reyes-Ochoa's driver, Gandarilla-Ayala was present at three pre-deal meetings between Gutierrez-Valle and Reyes-Ochoa. First, Gandarilla-Ayala attended a meeting in a hotel outside Chicago in January 2017, when Reyes-Ochoa and Gutierrez-Valle spoke about using Gutierrez-Valle's job hauling mobile homes to transport drugs. A few days later, the three men talked briefly at a Walmart in Indiana. And a few weeks before the arrests, Gandarilla-Ayala drove Reyes-Ochoa to Gutierrez-Valle's home to drop off a package of drugs.

Gandarilla-Ayala testified that, on the day of the planned transaction, he met Gutierrez-Valle at a restaurant in Chicago, and when Gandarilla-Ayala expressed reluctance about going through with the handoff, Gutierrez-Valle told him he "had to." Later, Gandarilla-Ayala gave his phone to Gutierrez-Valle to coordinate the logistics with Martinez. The plan changed several times, and the men eventually chose a truck stop as the meeting place. When they arrived, Gandarilla-Ayala pointed out what he thought were police officers in the parking lot, but Gutierrez-Valle said they "still had to do it." Gutierrez-Valle drove them to Martinez's truck and told Gandarilla-Ayala, "Go pick up the drugs." Gandarilla-Ayala got out of the car and told Martinez to "[g]et the things," and Martinez put the drugs in Gutierrez-Valle's car.

An agent from a multijurisdictional narcotics interdiction task force summarized phone records showing that, before the exchange, Gutierrez-Valle maintained frequent communication with Reyes-Ochoa through text messages and phone calls: Between January 14 and February 27, 2017, Gutierrez-Valle had seventy-seven contacts with Reyes-Ochoa. (Gandarilla-Ayala was in touch with Reyes-Ochoa about as often.)

After Gutierrez-Valle's conviction, the government argued that he should receive the two-level enhancement under § 3B1.1(c) for being an "organizer, leader, manager, or supervisor." It asserted that his "presence makes little sense if his purpose was not to supervise Gandarilla-Ayala." Gutierrez-Valle "shepherded" Gandarilla-Ayala through the transaction by arranging the meeting place, keeping in constant contact with Reyes-Ochoa, and telling Gandarilla-Ayala to get the drugs from Martinez. Gandarilla-Ayala was "the fall guy, the sap"—there to be the one who handled the drugs. Further, the government argued, the relationship was coercive because on the day of the deal Gutierrez-Valle told him he "had to" go through with it. Also, Gutierrez-Valle's three prior meetings with Reyes-Ochoa showed he was "more than a minor player" in the conspiracy.

The district court agreed with the government and, over Gutierrez-Valle's objection, applied the enhancement. The court found that Gutierrez-Valle was the leader of at least the February 2017 deal:

> [H]e essentially directed [Gandarilla-Ayala], and he did so with authority and discretion. He was the one that was basically directing the whole operation through the evidence of the communication, the texts, the change in locations, the pre-deal meetings. It's clear to the Court that the defendant was the leader of at least this transaction, and given the evidence of his role in the conspiracy, I think it is more than sufficient to support the two-level enhancement.

With the enhancement, Gutierrez-Valle's guidelines range was 121–151 months' imprisonment. The court sentenced him to 121 months, one month over the statutory minimum. *See* 21 U.S.C. § 841(b)(1)(A).

On appeal, Gutierrez-Valle challenges the application of the two-level leadership enhancement under § 3B1.1(c). The purpose of the enhancement is to "divide participants according to their 'relative culpability … in the criminal enterprise.'" *United States v. Anderson*, 988 F.3d 420, 427–28 (7th Cir. 2021) (quoting *United States v. Weaver*, 716 F.3d 439, 442 (7th Cir. 2013)). Application Note 4 suggests seven factors that

courts can consider in deciding whether to apply the enhancement, including (as most relevant here) the exercise of decision-making authority, the degree of participation in planning or organizing the offense, and the degree of control or authority exercised over others. *Id.* at 428 (citing § 3B1.1 cmt. n.4). This court has discouraged "slavish adherence" to the factors, *United States v. Bennett*, 708 F.3d 879, 891 (7th Cir. 2013), in favor of a "commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy." *United States v. McGee*, 985 F.3d 559, 562 (7th Cir. 2021) (quoting *United States v. House*, 883 F.3d 720, 723 (7th Cir. 2018)).

In determining whether the district court properly applied the § 3B1.1 enhancement, we review the district court's factual findings for clear error and whether those facts support the enhancement de novo. *Id.* The court's determination that Gutierrez-Valle occupied a leadership role is based on its interpretation of the evidence and is therefore a finding of fact that we review for clear error. *See United States v. Garcia*, 948 F.3d 789, 806 (7th Cir. 2020). We reverse only if "we are left with the definite and firm conviction a mistake has been made." *Id.*

The district judge's finding that Gutierrez-Valle was "the leader of at least this transaction" was not clearly erroneous. The judge concluded based on the evidence of "the communication, the texts, the change in locations, [and] the pre-deal meetings" that Gutierrez-Valle supervised Gandarilla-Ayala during the deal. That conclusion finds some support in the record: Gandarilla-Ayala testified that he gave his phone to Gutierrez-Valle, who arranged the logistics of the meeting with Martinez. And he further testified that Gutierrez-Valle twice told him he "ha[d] to" complete the deal when he grew hesitant. Evidence that a defendant arranged the logistics of a crime and exercised control over other participants can be sufficient to support the leadership enhancement. *See Anderson*, 988 F.3d at 428; *House*, 883 F.3d at 725. Although the judge's explanation was brief, she presided over Gutierrez-Valle's trial and her explanation was sufficient given her familiarity with the evidence. *See United States v. Morales*, 994 F.2d 386, 389 (7th Cir. 1993).

In addition to making a finding about the specific transaction, the judge also alluded to Gutierrez-Valle occupying a superior role in the conspiracy, saying, "I don't think he was at the top, but he certainly was not a follower." Although Gutierrez-Valle's precise position in the organization was never established, Gandarilla-Ayala's testimony about the three pre-deal meetings with Reyes-Ochoa, one of which involved Gutierrez-Valle receiving a large quantity of drugs, supports the court's finding that Gutierrez-Valle was higher in the hierarchy than Gandarilla-Ayala, who was a

spectator. *Anderson*, 988 F.3d at 427–28. Gandarilla-Ayala's testimony suggested that Gutierrez-Valle was a willing participant and repeat player who was likely involved in distributing drugs. Meanwhile, no evidence suggested that Gandarilla-Ayala was ever more than a driver and courier who was working off a debt.

Gutierrez-Valle urges that the record shows that Reyes-Ochoa, not Gutierrez-Valle, was the leader. That might be true, but even if Reyes-Ochoa was the highest-ranking participant, Gutierrez-Valle still can receive the enhancement. We have repeatedly recognized that criminal enterprises often involve multiple leaders. *See, e.g.*, *Garcia*, 948 F.3d at 806–07 (collecting cases). Thus, even if Gutierrez-Valle was receiving orders from Reyes-Ochoa and transmitting them, the judge did not clearly err in concluding that Gutierrez-Valle occupied a leadership role with respect to Gandarilla-Ayala in the conspiracy and in the specific transaction at issue. *See United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012).

AFFIRMED