In the

# United States Court of Appeals

### For the Seventh Circuit

No. 23-1315

UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

*v.*

SHAMONE WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 22-cr-20012 — **Colin S. Bruce**, *Judge.*

ARGUED FEBRUARY 14, 2024 — DECIDED MARCH 15, 2024

Before SCUDDER, ST. EVE, and LEE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. A jury convicted Shamone White of possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(D), possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i), and possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). On appeal, he challenges his firearm convictions, arguing that the government presented insufficient evidence to establish possession. He also contends that the district court improperly

instructed the jury, permitting it to find him guilty based solely on his admission that he touched the gun a week before his arrest. Because we find the evidence sufficient for each conviction and determine that the instruction was not misleading, we affirm.

## I. Background

### A. Factual Background

On January 29, 2022, a speeding car caught the attention of Kankakee Sheriff's Deputies Griffin Able-Bernier and Calvin Zirkle. They followed the car, which contained two occupants, a driver and a passenger, until it pulled into the parking lot of a liquor store. The Deputies watched from a distance as the driver, Elijah Campbell, got out and went inside while the other occupant waited in the front passenger seat. At that point, Deputies Able and Zirkle recognized Campbell from previous encounters. Campbell's license was suspended, and he could only operate vehicles equipped with a Breath Alcohol Ignition Interlock Device ("BAIID") to ensure his sobriety. Campbell returned and the Deputies followed as he drove to the parking lot of a nearby takeout restaurant. As the Deputies pulled up behind the car, the passenger, Shamone White, exited the car and walked toward the front door of the restaurant. At that time, the Deputies had little interest in White. They instead approached the car, asked Campbell to step out, confirmed that his license was still suspended and that the car lacked a BAIID, and placed him under arrest.

The Deputies then considered whether they should impound the car or turn it over to someone else. Campbell told them it belonged to his girlfriend and she needed it for errands and prenatal appointments. Faced with this decision,

the Deputies shifted their attention to White, who offered to take the car. He said he was staying at a nearby hotel and could drive the car to Campbell's girlfriend's home. Concerned about a strong smell of unburnt cannabis in the vehicle, the Deputies agreed that White could take the car provided he had a valid driver's license and a search of the vehicle turned up no contraband.

Behind the front passenger seat lay two bags: one large blue bag and one smaller gray bag. White explained to the Deputies that the blue bag was his and contained his daughter's PlayStation and some other "miscellaneous stuff."

Deputy Able picked up both bags, handing the blue bag to White. He then asked what was inside: "You got no like large amounts of cash in here, no cannabis—none of that stuff in here?" White denied having any contraband, after which Deputy Able, out of White's view, glanced inside the gray bag and saw a firearm. Deputy Able instructed White to open the blue bag, revealing exactly what White denied it contained— $3,336 in cash and two pounds of cannabis. The cannabis was in three vacuum-sealed plastic bags. One had been ripped open and held nine smaller bags, about an ounce each. The blue bag also contained an open box of plastic storage bags, a Madden 22 PlayStation game, a stick of deodorant, and a pair of underwear.

After discovering the cannabis inside White's bag, the Deputies arrested and searched him, finding cash, two plastic baggies of cannabis, a pack of Kool cigarettes, fingernail clippers, and a hotel keycard. They then asked whether the gray bag also belonged to him, but White denied ownership. A more thorough search of the gray bag revealed a loaded Walther Creed 9mm pistol, a box of 9mm ammunition, two scales

with residue on them (later confirmed to be cannabis residue), a pack of Kool cigarettes, and a toothbrush in a travel container. The firearm and the scales were in the same compartment of the gray bag, and police later learned that the firearm had been reported stolen.

The Deputies searched the rest of the vehicle, finding no other contraband. They did, however, find an empty Newport cigarette box in the driver's side door, a box of Newport cigarettes in the center console, and another box of Newports on the dashboard. They also searched Campbell, who did not possess cash, drugs, or any other contraband.

After placing White under arrest, the Deputies questioned him about the gray bag: "[S]o we found a gun in there, okay. Is there gonna be any reason that you put your hands on it or anything like that? Is there gonna—any DNA on there?" White seemed to know the gun Deputy Zirkle was talking about and responded, "Not that I know—I didn't know it was in there today.… But I don't—I don't know if I touched it before but I know I didn't touch it today because I didn't [know] it was there." Deputy Zirkle prompted, "So maybe at some point if—if we do, you know, send it off to the lab—," to which White admitted that he touched it, eventually stating that he had touched it last Saturday, though he had never shot it and did not know who it belonged to.

## B. Procedural Background

In March 2022, a grand jury indicted White for possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), carrying a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and possessing a firearm as a felon in

violation of 18 U.S.C. § 922(g)(1). The indictment stated that each offense occurred "[o]n or about January 29, 2022."

### 1. Trial

At trial in October 2022, the jury saw body camera footage and heard testimony from Deputies Able and Zirkle describing the events laid out above. Drug enforcement expert Clayt Wolfe, an Illinois State Police master sergeant and the director of the Kankakee Area Metropolitan Enforcement Group, also testified. Both the defense and prosecution issued subpoenas for Campbell to testify at trial, but he failed to appear.

After the Deputies testified to the facts surrounding White's arrest, complemented by excerpts from body camera footage, Wolfe gave expert testimony about common practices in drug trafficking. He explained that drug dealers typically purchase large quantities of a narcotic and then divide it into smaller increments for distribution using small plastic bags and scales. He also testified that large amounts of narcotics—often prepackaged into smaller amounts—plastic baggies, scales, firearms (often stolen) and ammunition, multiple cell phones, and large amounts of cash constitute the common tools of drug traffickers. In fact, he noted it would be rare for a dealer to not carry scales with their drug contraband. Examining photos of the contraband recovered from the blue and gray bag, Wolfe opined that together, the evidence suggested that the owner of the contraband was engaged in drug trafficking and that the contraband items collectively represented the tools of a drug trafficker.

### 2. Jury Instructions and Verdict

Over White's objection, the district court gave the jury the following "on or about" instruction:

The Indictment charges that the crime happened *on or about* January 29, 2022. The government must prove that the crime happened reasonably close to the date. The government is not required to prove that the crime happened on the exact date.

The next day, the jury found White guilty on each charge.

### 3. Motion for Acquittal

After trial, White moved for a new trial and for a judgment of acquittal on the two charges for possessing the firearm. He made two arguments in support of the motions: that the government presented insufficient evidence to convince a reasonable jury that he possessed the firearm, and that the "on or about" jury instruction impermissibly allowed the jury to conclude that merely touching the firearm the week before satisfied the possession requirement.

The district court denied White's motions. It explained that the jury could have reasonably inferred that White constructively possessed the gun due to its physical proximity, the presence of scales with drug residue in the same bag, and the fact that together, the contents of the blue bag—which he admitted to owning—and the gray bag made up the tools of the drug trade. That the cigarette brand found in the gray bag was consistent with the brand found on White, and the absence of evidence tying Campbell to the drugs or other contents of the gray bag, bolstered that inference. Finally, the court found that White's admission to having touched the gun a week prior satisfied § 922(g)(1)'s requirements.

As for White's objection to the "on or about" jury instruction, the court found that this circuit's precedent supports such an instruction.

At sentencing in February 2023, the district court sentenced White to a total of 144 months' imprisonment: 60 months for possessing marijuana with intent to distribute and 84 months for his possessing a firearm as a felon, to run concurrently, and 60 months for possessing a firearm in furtherance of a drug trafficking offense, to run consecutive to the other counts. White now challenges the jury verdict and the district court's denial of his motion for acquittal, reiterating the arguments he advanced in his motion for acquittal.

## II. Analysis

Federal law prohibits anyone convicted of a felony from possessing a firearm. 18 U.S.C. § 922(g)(1); *see also United States v. Perryman*, 20 F.4th 1127, 1135 (7th Cir. 2021). It also prohibits anyone from possessing a firearm "in furtherance of" a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A); *see also Perryman*, 20 F.4th at 1134. White contests only the possession element of his convictions for each of these offenses.

### A. Sufficiency of the Evidence

We review a district court's denial of a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal de novo. *United States v. Hidalgo-Sanchez*, 29 F.4th 915, 924 (7th Cir. 2022). When that motion is based on the sufficiency of the evidence, "we review the evidence presented at trial in the light most favorable to the government and draw all reasonable inferences in its favor." *Id.* (quoting *United States v. Anderson*, 988 F.3d 420, 424 (7th Cir. 2021)). Our review is highly deferential. "Ultimately, we 'will overturn a conviction only if, after reviewing the record in this light, we determine that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.'" *Id.* (quoting

*Anderson*, 988 F.3d at 424). In short, "[i]f there is a reasonable basis in the record for the verdict, it must stand." *Id.* (quoting *United States v. Moshiri*, 858 F.3d 1077, 1082 (7th Cir. 2017)).

White argues that the government put forth insufficient evidence to establish that he possessed the firearm, as required to be convicted under §§ 922(g)(1) and 924(c)(1)(A)(i). Possession may be either actual or constructive. *See United States v. Price*, 28 F.4th 739, 753 (7th Cir. 2022). To prove constructive possession, the government must show more than a defendant's "mere proximity" to the firearm. But "'proximity coupled with evidence of some other factor—including connection with [an impermissible item], proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise is enough to sustain a guilty verdict.'" *United States v. Griffin*, 684 F.3d 691, 696 (7th Cir. 2012) (quoting *United States v. Morris*, 576 F.3d 661, 668 (7th Cir. 2009)).

Here, a jury could have inferred that White possessed the firearm from his reactions to the Deputies' questions. When Deputy Zirkle asked him about the firearm without showing or describing it to him, White seemed to know exactly what gun Deputy Zirkle was talking about. He said he "didn't know it was in there today" and was not sure if he had touched it before. When Deputy Zirkle suggested they might check the gun for fingerprints, White admitted that he had touched it the previous Saturday. A jury could reasonably rely on White's awareness of the gun and his admission that he had touched it at some point to conclude that he constructively possessed the gun on the day of his arrest.

But that is not the only evidence of possession—other evidence bolsters that inference. The firearm was in close

proximity to White in the car on the day of the offense. A jury could have reasonably relied on this proximity, coupled with multiple other factors, to conclude that White constructively possessed the firearm. White admitted he owned the blue bag, which contained significant quantities of cannabis, some of it packaged for distribution in small plastic bags. The blue bag contained no scales, while the gray bag immediately next to it contained scales tainted by cannabis residue. A reasonable jury could infer that White, who was carrying drugs and supplies for packaging those drugs, would also carry scales to weigh the drugs as he packaged them for distribution. Indeed, at trial, the government's drug enforcement expert Master Sergeant Wolfe explained that it would be extremely rare for a dealer to carry drug contraband without scales to measure it. The presence of scales in the gray bag provides a reasonable basis for the conclusion that the gray bag, along with its contents, also belonged to White.

Not only are scales a crucial tool of the drug trade, so are handguns and ammunition, according to Master Sergeant Wolfe. Examining photographs of the contents of both bags, that expert concluded that together, the items in both bags formed a complete set of drug trafficking tools.

In addition to the scales, other contents of the gray bag pointed to White's ownership. White had a package of Kool cigarettes in his pocket, a match for the brand of cigarettes in the bag. The toothbrush in the gray bag also lined up with White's hotel stay, the hotel card and nail clippers in his pocket, and other personal items in the blue bag, including deodorant and underwear. In these circumstances, a reasonable jury could conclude the same person owned both bags.

Nor is this reasonable inference undermined by any apparent connection between the gray bag and Campbell or his girlfriend as the driver and owner of the vehicle. Police found Newport cigarettes, not Kools, scattered throughout the car. And outside of the two bags in the back seat, nothing in the car suggested its operator or owner needed drug scales as a dealer or even a user. In sum, the evidence was more than sufficient for a reasonable jury to conclude that White constructively possessed the firearm on the day of his arrest.

White argues that the jury impermissibly relied solely on his admission to touching the gun a week prior to his arrest in finding that he possessed it. He also argues that the brand of cigarettes—again in isolation—led the officers to conclude that the gray bag was his. As we explained above, however, the totality of the evidence, not those two pieces in isolation, provided a sufficient basis for a reasonable jury to conclude that he constructively possessed the firearm. This is enough to sustain the guilty verdict. *See United States v. Caldwell*, 423 F.3d 754, 759 (7th Cir. 2005) ("Although it is possible the jury decided the case in an impermissible fashion, that possibility exists in every case and we give jurors the benefit of the doubt unless 'no rational juror could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002))). Because the evidence as a whole was sufficient to support his conviction, we need not decide whether merely touching (without holding or handling) a firearm can support a conviction for possessing a firearm as a felon under § 922(g)(1).

**B. Jury Instructions**

"In the ordinary course we review a district court's decision to give a jury instruction for an abuse of discretion,

reversing 'only if the instructions, taken as a whole, misled the jury.'" *United States v. Thomas*, 970, F.3d 809, 815 (7th Cir. 2020) (quoting *United States v. Erramilli*, 788 F.3d 723, 730 (7th Cir. 2015)). Furthermore, "[i]f the instruction contains an error or misguides the jury, we reverse a jury verdict only if the error prejudiced the litigant." *United States v. Hilliard*, 851 F.3d 768, 782 (7th Cir. 2017). White argues that the "on or about" instruction was unnecessary and permitted the jury to find him guilty based solely on his admission to touching the firearm the week before his arrest.

We cannot agree that the instruction misled the jury. For one thing, there is no evidence that the jury relied solely on White's admission to find he possessed the firearm. At trial, prosecutors presented many other facts to the jury, the totality of which was sufficient for a juror to find that White constructively possessed the firearm on the day of his arrest. In context, nothing in the jury instructions directed the jury to consider a different date than that of White's arrest in isolation and to the exclusion of evidence from the date of his arrest. That cuts against finding prejudice.

This is particularly true in light of all charges for which he was found guilty, not just possession as a felon in violation of § 922(g)(1). The jury convicted White for possessing the firearm in furtherance of a drug trafficking offense in violation of § 924(c)(1)(A). The only evidence that White engaged in drug trafficking was the cannabis found on January 29. There was no evidence that he engaged in drug trafficking a week prior when he allegedly touched the firearm. The § 924(c) guilty verdict demonstrates that the jury did not lose sight of the date he was found with distribution amounts of cannabis. This verdict indicates the jury understood White to have

possessed the gun on the same day that the evidence established he engaged in drug trafficking—January 29, the day of his arrest. Under these circumstances, we find that the district court did not abuse its discretion in giving the instruction.

Despite our holding that the district court did not abuse its discretion by including the "on or about" instruction, we urge judges to consider carefully in each case whether that instruction is necessary. Here, the evidence centered undisputedly on January 29, and at least the § 924(c)(1)(A) charge required constructive possession on that day. In some cases, it may be clearer to simply instruct the jury that the government must prove that the crime happened *on* a particular date.

### III. Conclusion

For these reasons, the judgment of the district court is

AFFIRMED.