In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-4168

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AMANDA WORTMAN,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05-CR-40024-002-JPG—**J. Phil Gilbert**, *Judge.*

---

ARGUED APRIL 6, 2007—DECIDED JUNE 8, 2007

---

Before POSNER, FLAUM, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.* A jury convicted Amanda Wortman of knowingly altering, destroying, and mutilating a tangible object with the intent to impede, obstruct, and influence the investigation of a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), in violation of 18 U.S.C. § 1519.[1] She claims that the government's evidence against her was insufficient. For

---

[1] We note that Wortman's indictment used the word "and," though the statute uses the word "or." The discrepancy has no bearing on our decision, however, because it only increased the government's burden of proof.

the following reasons, the Court affirms Wortman's conviction.

## I. Background

Wortman owes her conviction in this case to a former boyfriend, Ryan McDonald, who the FBI, in February 2005, suspected of possessing child pornography. She became involved in the investigation after the FBI discovered that McDonald had been using Wortman's mother's computer to view illegal images, and three FBI agents arrived at Wortman's mother's home wanting to search her computer's hard-drive.

Wortman drove to her mother's home as soon as she learned that the agents were there, and the agents began questioning her about McDonald's interest in child pornography. She told them that she tried to stay out of that part of McDonald's life but provided a handwritten statement that said,

> We have had discussions in the past about thoughts that he has had about wanting to do certain activities with 11-12 yr olds when he was like 14-15 yrs old . . . . We have discussed on several occassions [sic] my recurring problems or feelings that he may still have about wanting to any [sic] activities with children and he has told me that he would <u>never</u> touch his daughter or any other child in any inappropriate manner.

Later that day, Wortman took the agents to the residence that she shared with McDonald, and McDonald showed up about ten minutes later. He admitted to the agents that he had accessed child pornography from the Internet and gave the agents computer discs and printed pages that contained child pornography. He also told them that he had lent three compact discs (CDs), one containing child pornography, to Stanley Tuttle, a man

who lived above Wortman's place of employment. The agents told McDonald not to tamper with, retrieve, or destroy any of the CDs that he had lent to Tuttle.

After the agents finished their discussion with McReynolds, they drove to Tuttle's home. By this time, Wortman was back at work, so the agents asked her to phone Tuttle's residence. Tuttle was not in his apartment, however, so the agents instructed Wortman not to do anything with the CDs and drove off.

When Wortman came home from work, she and McDonald spoke about the day's events and discussed going to Tuttle's residence to retrieve the CD that contained child pornography. McDonald said that he knew he was not supposed to do anything with the CD, but "really didn't want to leave it there either." Eventually, Wortman and McDonald decided to disobey the agents' instructions and drove to Tuttle's residence. McDonald called Rebecca Neville, Tuttle's girlfriend, and asked her to open the door to Tuttle's apartment. He told her that the FBI had visited him and that he needed to retrieve a CD from the apartment.

Inside Tuttle's apartment, McDonald found the three CDs in question and determined which one contained child pornography. At trial, he testified that the following occurred once he found the CD that he was looking for:

> I put the other two [CDs] in my pocket, and I took that one and I said, "Okay. This is the one." I said, "I don't want it." And I flexed it in my hand like I was going to break it, but I was afraid it would break and cut my hand so I said, "I don't want it." And I wiped it off. And then Amanda took it and said, "I will show you how it's done." And she snapped it in her fingers.

As he left Tuttle's apartment, McDonald told Neville to get rid of the broken CD because he did not want or need it.

At trial, Wortman admitted breaking the CD, but claimed that the agents never told her not to touch the CDs in Tuttle's apartment. She also testified that she broke the CD because she was upset and wanted to leave the apartment as quickly as possible. She said that there was marijuana in Tuttle's apartment and that she was afraid that if the FBI agents discovered her there, they would suspect her of being involved with drugs.

The day after Wortman broke the CD, the agents spoke with Tuttle. He told them that there was a broken CD in his home, and the agents told him to take it to the local sheriff's office. He picked up the pieces of the CD and gave them to Neville, who did as the agents instructed.

A week later, Neville assisted law enforcement by participating in a recorded phone conversation with Wortman. During the call, Neville told Wortman that the FBI had been asking her why Wortman broke the CD. Wortman told Neville to tell the agents that she did not know why Wortman broke the CD or that Wortman accidentally stepped on it.

After a two-day trial, the jury found Wortman guilty, and the district court sentenced her to one year and one day in prison.

## II. Analysis

"Defendants challenging the quantum of evidence supporting a jury verdict face a daunting task." *United States v. Luster*, 480 F.3d 551, 555 (7th Cir. 2007). When assessing the sufficiency of the evidence, the Court draws all reasonable inferences in the prosecution's favor and affirms if any rational jury could have found the elements of the crime beyond a reasonable doubt. *See United States v. Hicks*, 368 F.3d 801, 804-05 (7th Cir. 2004). Despite this difficult standard, Wortman argues

that no jury reasonably could have found that she intended to obstruct the FBI's investigation when she broke the CD.

Title 18, Section 1519 of the United States Code reads as follows:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . shall be fined under this title, imprisoned not more than 20 years, or both.

Wortman argues that she could not have formed the requisite intent to obstruct the FBI's investigation because McDonald was the center of the investigation and because he took the lead role in their plan to hunt down the CD and destroy it. She notes that it was McDonald's idea to look for the CD, that McDonald searched for the CD once they arrived at Tuttle's apartment, and that McDonald was the first person who attempted to break the CD. She further explains that she never intended to impede the FBI's investigation and that she only broke the CD because she was frustrated and wanted to leave Tuttle's apartment.

Wortman's argument manifests her confusion about the standard we apply when reviewing the sufficiency of the evidence. We do not reverse a conviction if a reasonable jury could have acquitted a defendant, we only reverse if the jury was obliged to acquit the defendant. *See United States v. Olson*, 450 F.3d 655, 664 (7th Cir. 2006); *United States v. Harris*, 271 F.3d 690, 704 (7th Cir. 2001). It is true, in this case, that if the jury believed Wortman's testimony, it may have concluded that she did not intend to impede the FBI's investigation. Perhaps, as Wortman

maintains, she broke the CD because she wanted to leave Tuttle's apartment or because she was frustrated. Maybe her act had nothing to do with the FBI and everything to do with her emotional state at the time.

On the other hand, the circumstantial evidence could tell a different story. At trial, the government offered testimony that Wortman broke the CD after learning that the FBI suspected her boyfriend of illegally possessing child pornography and after FBI agents explicitly told her not to touch the CDs. It also offered evidence that Wortman accompanied McDonald to Tuttle's apartment knowing that he wanted to destroy incriminating evidence. Finally, the government played a recorded conversation in which Wortman asked Neville to lie to FBI agents in an attempt to conceal what Wortman had done.[2]

This course of events suggests a woman fixed on keeping her boyfriend out of prison, even if it meant destroying evidence. Though Wortman characterizes her act as something done "in the heat of the moment," a reasonable jury could, and did, disagree. Consequently, the evidence was sufficient to support her conviction.

## III. Conclusion

For these reasons, the Court AFFIRMS Wortman's conviction.

---

[2] Despite Wortman's protestations to the contrary, this conversation was also evidence of her intent at the time she broke the CD. *See United States v. Ryan*, 213 F.3d 347, 350-51 (7th Cir. 2000) (holding that a defendant's attempt to conceal her crime is circumstantial evidence of her intent at the time she committed the act).

EVANS, *Circuit Judge*, dissenting. Amanda Wortman made several mistakes, but her biggest, by far, was getting mixed up with Ryan McDonald. It seems reasonable to suspect that most women want to steer clear of guys who possess kiddie porn and harbored "thoughts . . . about wanting to do certain things with children." But not Wortman. And to top it off, McDonald was a wimp. He was "afraid" to break the CD because, as he said, he feared it might "cut my hand." If having poor judgment in picking a boyfriend was a crime, Wortman would be guilty as charged. But that is not what the government, in what to me looks like a poor exercise of its vast prosecutorial discretion, charged her with. Because I believe the evidence failed, as a matter of law, to demonstrate that Wortman had the requisite intent to violate 18 U.S.C. § 1519 when, in the heat of the moment, she snatched the CD from McDonald and did what he was too afraid to do, I would reverse her conviction.

I think the evidence falls short of establishing that Wortman intended to "willfully destroy evidence or impede a federal investigation" by what she did, and under the circumstances she did it, in this case. McDonald, not Wortman, decided to go to Tuttle's apartment to look for the CDs and took back roads so he would not be followed. McDonald, not Wortman, knocked on Josh's door to use Josh's phone to call Becky to come let him in to Tuttle's apartment. McDonald, not Wortman, searched through Tuttle's apartment looking for the CDs. McDonald, not Wortman, attempted to review the contents of the CDs on the computer and DVD in order to figure out which CD he wanted to destroy. McDonald, not Wortman, made the initial attempt to break the CD. It was McDonald, not Wortman, who was attempting to "willfully destroy evidence or impede a federal investigation." Wortman, as I see the evidence, did not form any intent related to the FBI investigation of McDonald. Her conduct was in the

heat of the moment related to McDonald's specific intent to find and destroy the CD. McDonald used Wortman, in much the same way as he might have used a hammer, to accomplish his goal. Wortman's intent, it seems out of frustration, was to simply do something her wimpy boyfriend was too afraid to do himself because he didn't want to get hurt.

A true Copy:

     Teste:


_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*