In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 24-1320 & 24-1321

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK CLARK and SHAWN MESNER,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Western District of Wisconsin.
No. 22-cr-55-jdp — **James D. Peterson**, *Chief Judge.*

ARGUED DECEMBER 11, 2024 — DECIDED JUNE 10, 2025

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Derrick Clark and Shawn Mesner worked for Didion Milling, Inc. ("Didion"), a corn milling company. In May 2017, Didion's grain mill exploded, killing five employees. The Occupational Safety and Health Administration ("OSHA") investigated the explosion and ultimately referred Didion for criminal prosecution.

The government charged Didion and several of its employees with federal crimes relating to their work at the mill. Three of the defendants, including Clark and Mesner, proceeded to trial.

In this appeal, Clark and Mesner challenge the district court's evidentiary rulings and jury instructions, the indictment, the sufficiency of the evidence underlying their convictions, and the constitutionality of their convictions. We vacate Mesner's conviction on Count 4. For this count as to Mesner, we remand for an entry of judgment of acquittal and for further proceedings consistent with this opinion. Otherwise, we affirm.

## I. Background

### A. Factual History

Didion processes raw corn into ingredients that it sells to food and beverage manufacturers, like General Mills and Anheuser-Busch. Clark and Mesner worked at Didion's grain mill in Cambria, Wisconsin—Clark as Didion's vice president of operations, and Mesner as Didion's food safety superintendent.

On May 31, 2017, Didion's mill exploded, tragically killing five employees. After an investigation, OSHA issued citations and fines against Didion and referred it for criminal prosecution. The government's investigation uncovered wrongdoing related to falsification of records, false testimony, and conspiracy to commit those and other similar offenses. This misconduct centered on two processes: Didion's dust collection tracking and sanitation schedule.

### 1. Didion's Baghouse Logs

Grain milling generates significant amounts of grain dust, a pollutant. The Wisconsin Department of Natural Resources ("WDNR") issues permits to companies like Didion to help regulate pollutants. Didion had to certify its continued compliance with its WDNR permit every six months. The submission consisted of a compliance certification cover page and a deviation summary report, which required Didion to list known deviations from its permit.

Among other things, Didion's permit obligated Didion to monitor a parameter referred to as the baghouse pressure drop. Baghouses are pollution control devices that reduce emissions by capturing dust particles before they enter the air. The pressure drop is a measurement that reflects the efficiency of a baghouse. Didion's baghouses had to remain at a pressure drop range between 1.5 and 8 inches, with an allowance to drop to 0.5 inches in certain circumstances. Mill workers (or "millers") at Didion read the baghouse pressure drops and recorded them in baghouse logs.

Evidence adduced at trial established that millers did not accurately record the baghouse pressures. Instead, when the baghouse pressure reading was below "2" or above "8," millers consistently reported the number into the baghouse logs as "2" or "8"—regardless of the precise pressure. Didion's permit compliance certification covering January to June 2017 did not disclose this improper recording practice. Joseph Winch—a former Didion environmental manager who pleaded guilty—prepared the certification. Clark signed it.

Apart from the bi-annual compliance certifications, Didion underwent inspections from the WDNR and other

agencies. In May 2017, before the explosion, the WDNR conducted one such inspection—attended by both Winch and Clark. After the inspection, Winch emailed Didion's baghouse logs from 2015 through 2017 to the WDNR in response to its request. All entries of "2" and "8" in the 2015 and 2016 logs had yellow highlighting. The 2017 spreadsheet did not contain the same color coding. Winch did not include Clark on the email transmitting the logs to the WDNR.

Didion's certification and baghouse log color coding—as benign as the latter may seem—play a pivotal role in many of Clark's challenges on appeal.

### 2. Didion's Master Sanitation Schedule Logbook

The other process implicated by this appeal involved Didion's cleaning logs, which are central to Mesner's challenges.

Didion maintained a Master Sanitation Schedule logbook to track compliance with Didion's sanitation schedule. When workers completed cleaning tasks, they documented their initials and the date in the sanitation logbook. Shift superintendents reviewed and signed the logbook upon verification that workers completed required cleanings. Mesner, as Didion's food safety and technical superintendent, signed each page to verify task completion.

Former Didion employees testified at trial that workers and superintendents backfilled the sanitation logbook without verifying if anyone completed the cleanings. They testified that they often did so at Mesner's direction. One former shift superintendent stated that Mesner instructed him to stop writing "task not completed" in the sanitation logbook and, where he already had, to add an asterisk and indicate that cleanings were timely completed and verified. The witness

agreed that he "falsif[ied] the Master Sanitation Schedule" at "Mesner's instruction."

**B. Procedural History**

### 1. Pretrial Proceedings

In May 2022, a grand jury indicted Didion and six employees on nine counts related to the unsafe operation of Didion's mill and the conduct just described. The challenges Clark and Mesner raise on appeal implicate most of these counts.

Count 1 charged Didion, Clark, Mesner, and others with a conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349. It alleged that the defendants conspired to deceive food safety auditors about Didion's sanitation practices so the company could continue to sell millions of dollars of milled corn ingredients to food and beverage manufacturers.

Count 4 charged Didion, Clark, Mesner, and others with conspiracy to commit three federal offenses—18 U.S.C. §§ 1519, 1001(a)(3), and 1505—in violation of 18 U.S.C. § 371.

Counts 5, 6, 7, and 9 charged the defendants with violations of those underlying federal statutes: Count 5 charged Clark and others with falsifying a certification within the jurisdiction of the EPA, in violation of § 1519; Count 6 charged Clark and others with making and using a false document—the baghouse logs—in violation of § 1001(a)(3); Count 7 charged Clark, Mesner, and others with making and using a false document—the sanitation logbook—in violation of § 1001(a)(3); and Count 9 charged Clark and Didion with obstruction of agency proceedings, in violation of § 1505.

Before trial, four of the seven defendants pleaded guilty, including Didion.

### 2. Trial Proceedings

Clark, Mesner, and James Lenz, a former environmental manager, proceeded to trial. After a seven-day trial consisting of over twenty witnesses and hundreds of exhibits, the jury acquitted Lenz but convicted Clark on four counts and Mesner on two counts:

| Count | Clark | Mesner |
|---|---|---|
| Count 1: Conspiracy to Commit Mail and Wire Fraud, 18 U.S.C. §§ 1341, 1343, & 1349 | Not guilty | Guilty |
| Count 4: Conspiracy to Commit Federal Offenses, 18 U.S.C. § 371 | Guilty | Guilty |
| Count 5: False Entries in Record in Contemplation of Federal Investigation, 18 U.S.C. § 1519 | Guilty | Not charged |
| Count 6: Using False Document Within the EPA's Jurisdiction, 18 U.S.C. § 1001(a)(3) | Guilty | Not charged |
| Count 9: Obstruction of Agency Proceedings, 18 U.S.C. § 1505 | Guilty | Not charged |

### 3. Posttrial Proceedings

After trial, Clark filed a motion for judgment of acquittal or a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. Mesner filed a letter renewing his oral motion challenging the sufficiency of the evidence as to all counts against him and adopting specific portions of Clark's written motion. The district court denied the motions,

sentenced Clark and Mesner each to 24 months' imprisonment and one year supervised release, and imposed applicable monetary penalties.

They now appeal.

## II. Discussion

Clark and Mesner raise numerous challenges to their respective convictions. We summarize them as follows: (1) the district court erred in admitting Joseph Winch's plea agreement as substantive evidence; (2) the district court improperly admitted evidence related to legally invalid or dismissed charges, resulting in cumulative error; (3) the jury lacked sufficient evidence to convict Clark on Counts 5 and 6; (4) the district court gave a legally erroneous jury instruction on Count 4; (5) the OSHA housekeeping regulation incorporated by Counts 4 and 9 is unconstitutionally vague; (6) the jury lacked sufficient evidence to convict Mesner on Count 4; (7) the indictment did not charge a crime in Count 1 and, in any event, the jury lacked sufficient evidence to convict Mesner on Count 1.

### A. Clark

#### 1. Admission of Winch's Statement of Facts

Joseph Winch pleaded guilty to conspiring to commit a federal offense, as charged in Count 4. His plea agreement included a three-page statement of facts. In this statement, Winch agreed that he knew Didion's WDNR permit governed Didion's operations; identified permit violations; and informed Didion's leaders, including Clark, of the violations. Winch further admitted that he and Clark agreed to file a compliance certification and deviation summary report knowing it omitted violations.

During his testimony at trial, Winch contradicted these admissions. The government therefore sought to introduce the statement of facts as a prior inconsistent statement made under oath. Fed. R. Evid. 801(d)(1)(A).

The district court admitted the statement of facts over Clark's objection. Although Clark offers numerous challenges to the admission on appeal, at trial, he raised only one with adequate specificity: the statement of facts did not constitute a statement made by Winch under oath. We review this challenge for an abuse of discretion, reversing only if "no reasonable person could adopt" the district court's view. *United States v. Schmitt*, 770 F.3d 524, 532 (7th Cir. 2014).

Clark cannot make this showing. Winch attested to the truth and accuracy of the statement of facts during his plea hearing. He reaffirmed as much at trial. Winch's adoption of the statement of facts while under oath renders it admissible as his own prior statement, notwithstanding that the government drafted it. *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 758–59 (5th Cir. 2008) (finding no abuse of discretion in admitting a factual resume drafted by the government where the declarant attested to its accuracy under oath); *United States v. Cervantes*, 646 F.3d 1054, 1060 (8th Cir. 2011) (affirming the district court's admission of "the factual basis for [a] plea" where the witness "affirmed the … agreement under oath").

Clark also raises three new challenges to the admission of the statement of facts: the court (1) failed to review the plea hearing transcript to ensure that Winch adopted the entire statement under oath; (2) failed to confirm that each line of the statement was inconsistent with Winch's testimony under *Williamson v. United States*, 512 U.S. 594 (1994); and (3) failed

to exclude the statement for lack of foundation pursuant to Federal Rule of Evidence 701.

Clark did not raise these specific objections before the district court, and so we review for plain error. *See United States v. Echols*, 104 F.4th 1023, 1029 (7th Cir. 2024) ("A party … cannot preserve one specific objection by making a different specific objection in the trial court."). Under this standard, we will reverse only if a "plain" error occurred that affected both the defendant's "substantial rights" and "the fairness, integrity, or public reputation of the proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted); *United States v. Page*, 123 F.4th 851, 864 (7th Cir. 2024) (en banc) (internal quotation marks omitted).

Turning first to the plea hearing transcript, we disagree that the court needed to review it to assess whether Winch adopted the entire statement of facts. The court itself presided over the plea hearing and recalled questioning Winch. It could therefore appropriately determine whether Winch adopted the entire statement of facts without additional review.

Nor did the court err in not conducting a line-by-line comparison of Winch's statement of facts against his trial testimony to identify inconsistencies. In raising this challenge, Clark relies on *Williamson v. United States*, a case which requires courts to parse a hearsay declarant's statements when deciding whether to admit them against penal interest under Federal Rule of Evidence 804(b)(3). 512 U.S. at 599. But we have never applied *Williamson* outside of Rule 804, and we decline to find plain error for the district court's failure to do so. *See, e.g., United States v. Hopper*, 11 F.4th 561, 572 (7th Cir. 2021)

(finding no plain error "[g]iven the lack of controlling precedent in our circuit").[1]

Finally, Clark challenges the admission of Winch's statement of facts for failure to establish the proper foundation for the statements about Clark's state of mind. Federal Rule of Evidence 701(a) provides that a lay opinion must be "rationally based on the witness's perception." The witness's testimony must therefore concern something that the witness has "observ[ed]," or about which the witness has "first-hand knowledge." *United States v. Wantuch*, 525 F.3d 505, 513 (7th Cir. 2008) (quoting Fed. R. Evid. 701(a) Advisory Committee Note).

The statement of facts itself, together with Winch's trial testimony, assures us that the court did not plainly err in admitting the statement of facts. In the statement, Winch swore that he told Clark about permit violations. During trial, he testified that he discussed with Clark Didion's need to improve environmental compliance, drew Clark's attention to missing

---

[1] To the extent Clark challenges admission on the ground that Winch's testimony did not directly contradict every line of his statement of facts, we have explained that "inconsistency 'may be found in evasive answers … or changes in positions.'" *United States v. Gajo*, 290 F.3d 922, 931 (7th Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594, 608 (7th Cir. 1984)). The district court reviewed the statement of facts and perceived multiple inconsistencies. Winch acknowledged as much on the stand. Clark has not identified any particular statements that the court should have excluded as *not* inconsistent. We therefore defer to the district court, which sits in the best "position to evaluate … whether a witness's trial testimony is truly inconsistent with … prior … testimony." *Id*; *Williamson*, 512 U.S. at 621 (Kennedy, J., concurring) ("District judges … are close to the facts and far better able to evaluate the various circumstances" that impact the admissibility of evidence).

baghouse readings, and alerted Clark that baghouse log data revealed "hundreds of occurrences of a 2 or an 8 and zero occurrences of less than 2 or greater than 8, a statistically highly improbable pattern." This testimony evinces Winch's "first-hand knowledge" regarding what Clark knew.

We further take comfort from the fact that defense counsel extensively cross-examined Winch about his plea agreement. *See United States v. Allen*, 10 F.3d 405, 414 (7th Cir. 1993) ("Rule 701 places great reliance on a party's ability to cross-examine an opponent's witness and present any weaknesses in the witness's testimony to the trier of fact."). Indeed, counsel elicited testimony from Winch that aspects of the statement of facts (unrelated to Clark's knowledge) *were* untrue. Armed with Winch's testimony and prior sworn statements, the jury could decide what "weight or credibility" to afford to Winch. *Id.*

In all, the court's decision to admit Winch's statement of facts did not amount to either an abuse of discretion or plain error.[2]

### 2. Sufficiency of the Evidence for Falsification Charges

We turn next to Clark's challenges to the sufficiency of the evidence supporting his convictions on Counts 5 and 6, which

---

[2] Clark offers a handful of other evidentiary challenges that together, he claims, amount to cumulative error. None has merit. The challenged evidence relating to the sanitation logbook, dust accumulation, cleaning, and grain mill explosions exceeds the "low threshold" for relevance. *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). As to the sole unfair prejudice argument Clark developed on appeal, we afford "special deference" to the district court's observation that the jury already knew about the mill explosion and resulting deaths. *United States v. Proano*, 912 F.3d 431, 440 (7th Cir. 2019) (internal quotation marks omitted).

we review de novo. *United States v. Siepman*, 107 F.4th 762, 767 (7th Cir. 2024). "In undertaking this inquiry, we 'consider the evidence in the light most favorable to the Government,' and will reverse 'only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Peoples*, 119 F.4th 1097, 1101 (7th Cir. 2024) (quoting *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999)). Litigants seeking reversal under this standard face a "nearly insurmountable hurdle." *United States v. Frazier*, 129 F.4th 392, 403 (7th Cir. 2025) (quoting *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019)).

### a. False Entry in Didion's Compliance Certification

Count 5 of the indictment charged Clark with making a false entry in Didion's 2017 mid-year compliance certification and deviation summary report, in violation of 18 U.S.C. § 1519. A person violates § 1519 if he "knowingly … falsifies, or makes a false entry in any record … with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction" of a federal agency. *See United States v. Sheffler*, 125 F.4th 814, 826 (7th Cir. 2025).

The compliance certification, which Clark signed, provided that from January to June 2017, Didion "was in continuous compliance" with its WDNR permit, "EXCEPT for the deviations identified in the deviation summary report …." The report did not disclose that Didion's millers had a practice of recording baghouse pressure drops of "2" and "8" when the gauge reflected a number outside of that range.

A jury could reasonably conclude that Clark violated § 1519 when he verified compliance with Didion's permit without mentioning the company's improper recording practice. The WDNR permit required Didion to accurately report pressure drops, not just maintain them within a certain range. And based on the evidence presented, a jury could reasonably conclude that Clark understood the permit requirements, knew about Didion's inaccurate recording practice, and knew the practice would violate Didion's permit. It saw, for example, the at-issue deviation summary report that expressly required Didion to "monitor and record the pressure drop across the baghouse." It also saw a March 2017 email, which Clark received, instructing mill superintendents to immediately discontinue "the practice of recording the baghouse pressure drops as '2' … whenever the pressure drop falls below a 2" and instead to record the observed number. Finally, it saw an email from Clark reminding employees to take the required baghouse readings at the required times or risk violating Didion's permit and the law.

If that evidence alone were not enough, Winch swore in his statement of facts that Clark knew the report omitted Didion's falsification of the baghouse logs and that such omission would violate the WDNR permit.

Winch's testimony that he never told Clark the report contained false information does not undermine the reasonable inference the jury could draw from this evidence. It heard — and clearly rejected — Winch's testimony. We do not reweigh evidence or reassess credibility when evaluating the sufficiency of evidence. *See United States v. Medina*, 969 F.3d 819, 821 (7th Cir. 2020). The jury could have credited Winch, or it could have credited the ample evidence supporting that Clark

reviewed the deviation report, knew about inaccurate reporting practices, and therefore knew that the report conveyed false information when he signed it.

Clark cannot escape liability simply because he did not draft the report. He attested to its accuracy "based on information and belief formed after reasonable inquiry." On the facts before us, that qualifies as a "false entry" for purposes of § 1519.

Viewing the evidence in the light most favorable to the government, a reasonable jury could have convicted Clark on Count 5.

### b. Use of Falsified Baghouse Logs

Clark next challenges his conviction on Count 6 for violating 18 U.S.C. § 1001(a)(3). Section 1001(a)(3) prohibits making or using a document containing a false statement in a matter within a federal agency's jurisdiction. Although similar to Count 5, this charge centered on Winch submitting Didion's baghouse logs to the WDNR in August of 2017.

The government pursued an aiding and abetting theory of liability against Clark on this count. Under 18 U.S.C. § 2, a person who aids or abets "an offense against the United States … is punishable as a principal." A jury can convict a defendant "as an aider and abettor upon a proper demonstration of proof so long as no unfair surprise results." *United States v. Valencia*, 907 F.2d 671, 677 n.5 (7th Cir. 1990).

Clark cannot credibly claim surprise at this theory. The indictment expressly charged the Count 6 defendants, Clark included, with a violation of § 1001(a)(3) *and* § 2. The court also gave a general aiding and abetting instruction at trial, providing the elements and pointing the jury to "some of the counts

of the indictment … [that] include[] the allegation that the defendant aided and abetted the offense."

Turning to the merits, to convict Clark, the government first had to prove that Winch violated § 1001(a)(3). To do so, it had to establish that Winch (1) made or used a false document; (2) knowing the document contained a false statement or entry; (3) the false statement or entry was material; (4) the defendant made or used the document knowingly and willfully; and (5) the defendant used the document in a matter within the jurisdiction of a United States agency. *See United States v. Clark*, 787 F.3d 451, 459 (7th Cir. 2015). Clark contests only whether the government proved that Winch "used" the baghouse logs for purposes of § 1001(a)(3).

The district court instructed the jury, without objection, that "a defendant 'uses' a document containing false entries if the person actively employs it for an illegal purpose or makes an express or implied representation of the document's accuracy." Section 1001(a)(3) does not require that a defendant "actually represent to an agency that the facts contained in the submitted documents are correct." *United States v. Steele*, 933 F.2d 1313, 1315–16, 1319 n.5, 1322 (6th Cir. 1991) (affirming the defendant's § 1001(a)(3) conviction where he knowingly submitted false documents to the IRS in response to a request from an IRS agent).

Winch testified that he "submitted" to the WDNR "baghouse pressure drop readings … that did not represent their actual readings." He also removed the color coding from the 2017 baghouse logs. Although he testified that he did so per industry best practice, he acknowledged that he "may" have told government officials that he removed the highlighting "intentionally to make it more difficult for regulators to

identify readings that were outside parameters." Viewing the evidence in the light most favorable to the government, a jury could reasonably conclude that Winch "used" the baghouse logs when he submitted them to the WDNR knowing they contained material falsities. *See id.* at 1319 n.5 ("[A] defendant 'uses' a writing in a manner proscribed by section 1001 when [he] … knowingly and willfully submit[s] a false and material document to an agency on a matter that is within the jurisdiction of such agency.").

To prove that Clark aided and abetted Winch's conduct, the government had to establish that Clark took "an affirmative act in furtherance of [the] offense" with "the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014); *United States v. Anderson*, 988 F.3d 420, 424 (7th Cir. 2021).

"Precedent sets a low bar for satisfying the 'affirmative act' requirement." *United States v. Cejas*, 761 F.3d 717, 729 (7th Cir. 2014). A defendant need not participate in every element of the offense to face liability. *See Rosemond*, 572 U.S. at 73; *see also United States v. Johnson*, 319 U.S. 503, 515 (1943) (characterizing as "irrelevant" the defendants' "non-participation" in the filing of a false tax return). Section 2 covers "all assistance rendered by words, acts, encouragement, support, or presence." *Rosemond*, 572 U.S. at 73 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993)).

The removal of color coding from the 2017 logs falls squarely within an affirmative act.[3] Winch testified that he

---

[3] The removal of color coding is relevant because it illustrates the defendants' intent, not because it has (or lacks) special significance to regulators.

told government attorneys he and Clark "agreed" to remove the color coding during a preaudit meeting where they "discussed what records were to be reviewed by the [W]DNR." The jury could have reasonably concluded that Clark took an affirmative act in agreeing with Winch to remove the color coding in furtherance of the § 1001(a)(3) offense.

As for intent, "the classic articulation …. require[s] a shared intent between the principal and the accomplice as to the offense." *United States v. Carr*, 107 F.4th 636, 649–50 (7th Cir. 2024); *see also United States v. Carter*, 695 F.3d 690, 697 (7th Cir. 2012) ("[I]t is well established that 'the state of mind required for conviction as an aider and abettor is the same state of mind required for the principal offense.'" (quoting *United States v. Reiswitz*, 941 F.2d 488, 494 (7th Cir. 1991))).[4] Viewing the evidence in the light most favorable to the government, we assume the jury credited Winch's statement that he may have told the government that he removed the color coding to deceive regulators, and discredited his testimony that he did so per industry best practice. Although Winch did not testify that Clark shared his intent, viewing the evidence in the light most favorable to the government, a jury could reasonably infer as much based on Clark attesting to the accuracy of Didion's permit deviation report, which omitted mention of the falsified baghouse logs. A jury could further conclude that Clark intended Winch's use of the baghouse logs because he

---

[4] The Supreme Court in *Rosemond* left open the possibility that a defendant could be held liable for "natural and probable consequences" of the intended offense. *Carr*, 107 F.4th at 651 n.5. Without meaningful argument from the parties, however, and in line with the district court's jury instructions, we proceed with the "classic articulation" of accomplice liability requiring shared intent. *Id.* at 650–51.

agreed with Winch to remove the highlighting, attended a WDNR audit where inspectors reviewed the baghouse logs but said nothing about their systematic falsifications, and knew that the WDNR had an interest in enforcing its permit.

We have made clear that "[w]e do not reverse a conviction if a reasonable jury *could* have acquitted a defendant, we only reverse if the jury was *obliged* to acquit the defendant." *United States v. Wortman*, 488 F.3d 752, 754 (7th Cir. 2007) (emphasis added). The government presented enough evidence against Clark on Count 6 to support his conviction.

### 3. Section 371 Conspiracy Charge

We next consider Clark's two independent challenges to Count 4, which charged a conspiracy to commit three "of-fense[s] against the United States": (1) making or using a false document, in violation of § 1001(a)(3); (2) falsifying documents in a federal investigation, in violation of § 1519; and (3) obstructing an agency proceeding, in violation of § 1505. 18 U.S.C. § 371; *Ocasio v. United States*, 578 U.S. 282, 287 (2016). Clark first argues that the court improperly instructed the jury, and so he is entitled to a new trial.[5] He further argues that Counts 4 and 9 relied on an unconstitutionally vague regulation, and so the court should have dismissed them.

#### a. Jury Instructions

To secure a new trial based on improper jury instructions, an appellant "must show both that the instructions did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled."

---

[5] Mesner joined this challenge. Because we vacate his conviction for insufficient evidence, however, we consider it only as to Clark.

*United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (internal quotation marks omitted). Where an appellant preserves his challenge, we review de novo whether instructions as a whole accurately summarize the law, affording substantial discretion to the district judge's precise wording. *United States v. Christophel*, 92 F.4th 723, 726–27 (7th Cir. 2024).

In relevant part, the district court instructed the jury:

Count 4 of the indictment charges all defendants … *with a conspiracy to commit three federal crimes.*

…

To prove a defendant guilty of the conspiracy in Count 4, the government must prove … [t]he conspiracy as charged in Count 4 existed; [t]he defendant you are considering knowingly became a member of the conspiracy with the intent to advance the conspiracy by committing at least one of the specified federal offenses; and [o]ne of the conspirators committed an overt act in an effort to advance the goals of the conspiracy.

*The indictment alleges that the overarching objective of the conspiracy was to conceal violations and unsafe conditions at Didion … from auditors and government agencies.* The indictment alleges that the objective of the conspiracy would be achieved by committing three federal offenses, specifically [violations of § 1001(a)(3), § 1519, and § 1505]. …

… [T]he government must prove that the defendant you are considering joined the conspiracy with the intent of advancing the conspiracy by committing one or more of the three federal offenses. *The members of the*

*conspiracy did not have to agree to commit the same federal offense. But for each charged defendant, you must agree unanimously that the defendant intended to commit at least one of the three federal offenses.* You will indicate on the verdict form which of the crimes you find that defendant to have intended.

The court also provided a special verdict form. In the event of a guilty verdict on Count 4, the form instructed the jury to indicate which federal offenses each defendant conspired to commit. For Clark, the jury selected all three enumerated offenses. For Mesner, the jury selected § 1001(a)(3) and § 1505.

Clark finds multiple flaws in the court's jury instructions—they failed to require the jury to find the proper "object" of the conspiracy, erroneously instructed that members of the conspiracy did not have to agree to commit the same federal offense, and permitted the jury to reach a non-unanimous verdict. We are not persuaded.

*Object of the Conspiracy.* The parties agree that the object of a § 371 conspiracy must be a specific federal offense—rather than, for example, a conspiracy to conceal unsafe conditions from regulators. *See United States v. Clay*, 495 F.2d 700, 710 (7th Cir. 1974) ("[U]nder 18 U.S.C. § 371 … the object alleged must be an 'offense against the United States.'"). The jury instructions, when read in their entirety, accurately reflected the law. They made clear that Count 4 charged the defendants "with a conspiracy to commit three federal crimes." They also enumerated each federal offense, pointed the jury to the elements of each offense, and required the government to prove that each defendant intended to commit at least one of the specified federal offenses.

To the extent the jurors did not understand the law from the instructions alone, the special verdict form would have alleviated any confusion. *See Downing v. Abbott Lab'ys*, 48 F.4th 793, 811 (7th Cir. 2022) (the district court did not abuse its discretion in denying the defendant's proposed jury instruction where the verdict form clarified the law); *cf. United States v. Matthews*, 505 F.3d 698, 710 (7th Cir. 2007) (special verdict forms can alleviate juror confusion). It asked the jury to identify which of the three enumerated federal offenses each defendant conspired to commit.

Given the instructions' legal accuracy, we see no error in the court also describing as an "overarching objective" of the conspiracy "conceal[ing] violations and unsafe conditions … from auditors and government agencies." *See United States v. Treadwell*, 760 F.2d 327, 335–37 (D.C. Cir. 1985) (that the district court provided a "description of the generic crimes charged" did not infect the § 371 instruction where the court also enumerated the specific federal offenses). Nor do we share Clark's concern that jurors conflated the object of the conspiracy with an "overt act"; the court defined "overt act" in detail for the jury and read the indictment, which alleged thirty-one overt acts distinct from the alleged objects.

*Conspirator Agreement.* Clark next challenges the court's instruction that "[t]he members of the conspiracy did not have to agree to commit the same federal offense." At oral argument, the parties agreed on the law: a defendant charged with a conspiracy under § 371 must agree with at least one other conspirator to commit the same federal offense (although they need not agree on, or take, the same acts to achieve it). *See, e.g., Ocasio*, 578 U.S. at 288 ("[C]onspirators must pursue the same criminal objective, [but need] not agree to commit or

facilitate each and every part of the substantive offense." (internal quotation marks omitted)); *United States v. Stavroulakis*, 952 F.2d 686, 690–91 (2d Cir. 1992) ("Where … the indictment charges a conspiracy under the 'offense' clause of [§ 371], the conspirators must have agreed to commit the same offense."); *cf. United States v. Hughes*, 310 F.3d 557, 561 (7th Cir. 2002) (approving jury instruction that provided, "in order to convict …, [the jury] had to agree unanimously that the defendants conspired to" commit the same § 371 offense).

Setting aside whether the court's instruction accurately stated the law, the record reveals that Clark not only failed to preserve his objection,[6] but affirmatively approved of the instruction at issue, resulting in waiver. *See United States v. Friedman*, 971 F.3d 700, 711–12 (7th Cir. 2020) ("a defendant's affirmative approval of a proposed instruction results in waiver," which "precludes appellate review" (internal quotation marks omitted)). The court's proposed Count 4 instruction contained the precise sentence to which Clark now objects. Yet when given the opportunity to respond, Clark provided detailed objections to other aspects of the instruction and stated that "the remainder of the Court's proposed instruction"—including the sentence challenged—was "unobjectionable …." Clark continued to submit written objections

---

[6] That Clark initially sought a different instruction on conspirator agreement does not preserve his challenge for appeal. *See United States v. Irorere*, 228 F.3d 816, 825 (7th Cir. 2000) ("'[M]erely submitting instructions is not sufficient' to preserve an objection." (quoting *United States v. Douglas*, 818 F.2d 1317, 1322 (7th Cir. 1987))); *United States v. Requarth*, 847 F.2d 1249, 1252 (7th Cir. 1988) ("To preserve an objection to the district court's failure to give a proposed jury instruction, a party must do more than simply submit the proposed instruction for the court's consideration.").

but never challenged the language he highlights on appeal. *See id.* at 712 ("By choosing to pursue changes to certain instructions and forgoing multiple chances to change others, [the appellant] waived other possible jury instruction challenges."). To the contrary, during the final jury instruction conference, Clark's counsel proposed an instruction almost identical to the one he now opposes.[7] Clark thus waived his opportunity to challenge it. *See United States v. Krahenbuhl*, 88 F.4th 678, 686 (7th Cir. 2023) ("[A] defendant cannot later complain of an instruction he proposed."); *see also Dennis v. United States*, 341 U.S. 494, 500 n.2 (1951) (where "petitioners themselves requested a charge similar to the one given," the federal rules "appear to … bar[] [petitioners] from" challenging the charge on appeal).

*Juror Unanimity.* Finally, we address Clark's assertion that the court erred by failing to instruct the jury that it must unanimously agree on which offense(s) each defendant conspired to commit. The government does not dispute this unanimity requirement, which accurately reflects the law. *See, e.g.*, *United States v. Griggs*, 569 F.3d 341, 344 (7th Cir. 2009) (jurors must agree unanimously on the object of a conspiracy); *Hughes*, 310 F.3d at 561 (same).

The court instructed the jury that its verdict, whether guilty or not guilty, "must be unanimous" on each count. It

---

[7] Clark's counsel stated:

[C]an't you just instruct that they don't have to agree on which federal offense was committed? 'The objective of the conspiracy would be achieved by committing three federal offenses, specifically –' you list them out[.] '– the defendants did not have to agree as to which specific offense would be committed.'

provided a specific unanimity instruction on Count 4: the jury needed to agree "unanimously" that the defendant under consideration "intended to commit at least one of the three federal offenses." Clark did not object to the court's unanimity instructions, so we review for plain error. *See United States v. Shorter*, 874 F.3d 969, 977 (7th Cir. 2017) (reviewing for plain error the court's failure to give a specific unanimity instruction).

We discern none. The court instructed the jury regarding the need for unanimity with respect to the object(s) of the offense. It further instructed the jury to indicate on the special verdict form what crimes each defendant intended to commit. The form, in turn, depicted the jury's finding that Clark conspired to commit each of the enumerated offenses—all crimes for which the jury also returned a unanimous guilty verdict. Compare these instructions with the "overt act" unanimity instruction, which provided that although the jury needed to agree unanimously that the government proved at least one overt act, it did *not* need to agree unanimously on a single specific overt act.

We reverse only where the instructions as a whole mislead the jury. *See United States v. Madoch*, 149 F.3d 596, 599 (7th Cir. 1998). The court's unanimity instructions, when considered together with the rest of the jury instructions, sufficiently apprised the jury of the law and do not amount to plain error.

*       *       *

The district court's § 371 instruction is not a model of clarity. One preferable course would have been to provide a specific unanimity instruction in line with our pattern instructions—e.g., that the jury must agree unanimously on which

particular federal offense the defendant conspired to commit. *See William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* § 4.04, § 5.08(A) (2023 ed.). That a court could have made an instruction "clearer," however, is not the standard. *See Christophel*, 92 F.4th at 728 (potentially erroneous jury instruction did not require reversal because the instructions altogether provided "legally accurate directions to the jury"); *Shorter*, 874 F.3d at 977 (failure to provide a specific unanimity instruction did not amount to plain error even though "an instruction on unanimity may have been preferable"). Considering the instructions as a whole, we see no errors warranting a new trial.

### b. Constitutionality of OSHA Regulation

Clark also challenges his conviction on Count 4, as well as Count 9, on the ground that the government relied on an unconstitutionally vague regulation, namely, OSHA's housekeeping regulation for grain-handling facilities, 29 C.F.R. § 1910.272. Clark specifically takes issue with subsection (j)(1), which provides:

> The employer shall develop and implement a written housekeeping program that establishes the frequency and method(s) determined best to reduce accumulations of fugitive grain dust on ledges, floors, equipment, and other exposed surfaces.

We question Clark's ability to challenge this regulation, which covers only "employer[s]." In any event, the government did not charge Clark with violating it. Counts 4 and 9 both involved offenses premised on Clark making false statements to the government. We will not weigh in on the constitutionality of an uncharged offense where, as here, Clark's

dishonesty convictions would stand with or without reliance on § 1910.272(j)(1), which simply details the requirement that covered entities maintain a housekeeping program.[8] *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("[F]ederal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions.").

We therefore affirm Clark's conspiracy conviction, as charged in Count 4, and his § 1505 conviction, as charged in Count 9.

## B. Mesner

### 1. Sufficiency of the Evidence for Section 371 Conspiracy

With Clark's challenges resolved, we turn to Mesner. Mesner contests the sufficiency of the evidence to convict him on Count 4—a § 371 offense predicated on a conspiracy to violate 18 U.S.C. § 1505 or § 1001(a)(3). We must therefore determine whether sufficient evidence existed to convict Mesner of conspiring to obstruct Clark's OSHA deposition (in violation of § 1505, as charged in Count 9); or of conspiring to make or use false documents within a federal agency's jurisdiction (in violation of § 1001(a)(3), as charged in Count 6).

---

[8] Clark's conviction on Count 4 would stand for an independent reason. Of the three federal offenses alleged as the object of the Count 4 conspiracy, only § 1505 incorporated the OSHA regulation. Because the special verdict form established that the jury also convicted Clark of conspiring to violate §§ 1519 and 1001(a)(3), the success of Clark's vagueness challenge would not upset his conviction. *See United States v. Sababu*, 891 F.2d 1308, 1326 n.6 (7th Cir. 1989) ("[A] conspiracy conviction will be [up]held as long as the evidence shows that the defendants agreed to commit at least one of the alleged objectives of the conspiracy.").

As relevant to Mesner's challenge, to prove a conspiracy under § 371, the government needed to establish "a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" *Ocasio*, 578 U.S. at 287 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). A defendant charged under § 371 must "reach an agreement with the specific intent that the underlying crime be committed by some member of the conspiracy." *Id.* at 288 (internal quotation marks omitted).

The government all but conceded that the jury lacked sufficient evidence to convict Mesner for conspiring to violate § 1505, which prohibits obstruction of agency proceedings. For good reason. The government presented no evidence that Mesner knew about Clark's OSHA deposition, let alone conspired with him to obstruct it. *See United States v. Coplan*, 703 F.3d 46, 68 (2d Cir. 2012) (reversing a § 371 conviction predicated on false statements where "[t]he Government [did] not contend that [the defendant] even knew about the … depositions before they occurred, much less discussed [the coconspirators'] testimony").

The same is true with respect to the § 1001(a)(3) predicate. The court instructed the jury that Count 4 charged Mesner and others with a conspiracy to commit three federal crimes, including knowingly and willfully making and using false documents in violation of § 1001(a)(3). It then directed the jury to the elements for a § 1001(a)(3) violation "in the instructions for Counts 5 through 9." Those instructions included only one mention of § 1001(a)(3): in the instruction on Count 6, which recounted that the indictment alleged "Clark and James Lenz knowingly and willfully made and used a false document,

specifically the baghouse logs …, in violation of 18 U.S.C. § 1001(a)(3)."

The government presented no evidence that Mesner had any involvement with the baghouse logs. Instead, it asks us to affirm Mesner's conviction as premised on his falsification of Didion's sanitation logbook, as set forth in Count 7. But the government dismissed Count 7 at the close of evidence. The court did not instruct the jury on Count 7, nor did it read the count from the indictment. To the contrary, it directed the jury to "disregard Count 7" as it was "no longer part of this case."

We decline to uphold a conviction premised on a count that the government dismissed, and on which the court never instructed the jury. Based on the unique facts of this case, we reverse Mesner's Count 4 conviction for conspiracy to commit a federal offense in violation of § 371.

### 2. Wire and Mail Fraud Conspiracy Charge

We at last consider Mesner's challenges to Count 1, which charged Mesner, Clark, and others with a conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349. The fraud statutes criminalize the use of interstate carriers or wires for "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises …." 18 U.S.C. §§ 1341 (interstate carriers), 1343 (wires); *see also Kousisis v. United States*, 145 S. Ct. 1382, 1390 (2025).

"Scheme to defraud" includes a materiality requirement. *Neder v. United States*, 527 U.S. 1, 20, 25 (1999). In *Kousisis*, the Supreme Court described the standard to evaluate materiality as unsettled: a falsity is material either if it "has a natural tendency to influence, or [is] capable of influencing," the victim's

decision, *Neder*, 527 U.S. at 16 (alteration in original) (internal quotation marks omitted), or, more narrowly, if it goes to "the very essence of the bargain," *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 n.5 (2016) (quoting *Junius Constr. Co. v. Cohen*, 178 N.E. 672, 674 (N.Y. 1931)). *See Kousisis*, 145 S. Ct. at 1396.

A mail or wire fraud conviction also requires the government to prove that "money or property was 'an object of [the defendants'] fraud.'" *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (quoting *Kelly v. United States*, 590 U.S. 391, 398 (2020)). Because these statutes aim to "protec[t] property rights," it is not enough if the defendants simply "engaged in deception." *Id.* (first quoting *Cleveland v. United States*, 531 U.S. 12, 19 (2000); and then quoting *Kelly*, 590 U.S. at 398).

Mesner contests the district court's denial of his motion to dismiss the indictment for failure to allege a scheme to defraud. He also challenges the sufficiency of the evidence to prove such a scheme at trial.

### a. Indictment

We review de novo the district court's decision not to dismiss the indictment. *United States v. Chanu*, 40 F.4th 528, 539 (7th Cir. 2022). Under Federal Rule of Criminal Procedure 7(c)(1), an indictment need only "be a plain, concise, and definite written statement of the essential facts constituting the offense charged …." Detailed allegations "are not contemplated." *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). So long as an indictment "sets forth the offense in the words of the statute itself" along with "the elements necessary to constitute the offense," it will generally survive a motion to dismiss. *United States v. Bates*, 96 F.3d 964, 970 (7th Cir.

1996) (quoting *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981)).

Count 1 easily meets this standard. Spanning six pages of the indictment, the charge tracks the statutory language and includes the elements of the offense. Still, Mesner urges us to reverse because, as he sees it, the indictment fails to allege a scheme to deprive Didion's customers of a traditional property interest, like money.

We disagree. The government identified the "object" of the fraud as to obtain money ("millions of dollars"), alleged that Didion engaged in false and misleading conduct so it could "sell products," and claimed that based on Didion's deceptive conduct, the company "remained qualified to supply ingredients … and continued to deliver ingredients … in exchange for money …." These allegations suffice. *See, e.g.*, *United States v. Shelton*, 997 F.3d 749, 774 (7th Cir. 2021) (the indictment charged "a viable legal claim" where it alleged that "[t]he object of the conspiracy was … to obtain money and property"); *United States v. Porat*, 76 F.4th 213, 219–20 (3d Cir. 2023) ("money was an object of [the defendant's] scheme" where the indictment alleged that he "used deception [in rankings] to 'attract[] more students to apply to … and pay tuition to'" his business school).[9]

---

[9] Mesner's attempt to use *Ciminelli* to invalidate Count 1 falls flat. In *Ciminelli*, the Supreme Court rejected the Second Circuit's "right to control theory" of wire fraud, which imposed liability on a defendant for depriving a victim of a non-traditional property interest: "potentially valuable economic information necessary to make discretionary economic decisions." *Ciminelli*, 598 U.S. at 310; *see also United States v. Griffin*, 76 F.4th 724, 738 (7th Cir. 2023). Because the government relied solely on the right

Mesner appears to separately challenge the indictment on the ground that Didion's customers received exactly what they paid for—Didion's corn products. Whether construed as another challenge to the legal theory set forth in the indictment or as a challenge to the facial sufficiency of the facts, we again disagree.

Fraud may lie even when the victim receives the product at issue. *See Kousisis*, 145 S. Ct. at 1389 (affirming judgment of wire fraud where the victim received paint work that met its expectations). A customer does not receive what it paid for if the defendant misrepresents "an essential element of the bargain." *United States v. Kelerchian*, 937 F.3d 895, 912–13 (7th Cir. 2019) (internal quotation marks omitted);[10] *see also United States v. Filer*, 56 F.4th 421, 431 (7th Cir. 2022) (keeping a victim "in the dark about a key fact" of a transaction, unlike concealing "a mere negotiating position," gave rise to actionable wire fraud). The indictment here alleged as much. It claimed, for

---

to control theory to convict, the Court reversed without evaluating whether the record also supported a traditional property-fraud theory. *Ciminelli*, 598 U.S. at 310–11 & n.1, 316–17; *Kousisis*, 145 S. Ct. at 1398. Here, in contrast, Count 1 alleged that the charged defendants sought to deprive their customers of money, an interest undisputably covered by the fraud statutes. *See* 18 U.S.C. §§ 1341, 1343; *United States v. Bolos*, 104 F.4th 562, 570 (6th Cir. 2024) (rejecting the defendant's reliance on *Ciminelli* where the indictment alleged that the scheme's purpose was "to obtain large sums of money").

[10] We have not abrogated our decision in *Kelerchian*. In *United States v. Griffin*, we observed that "[w]hatever the fate of *Kelerchian* after *Ciminelli*," the charged conduct in *Griffin* violated the federal wire fraud statute. 76 F.4th at 740. Here too, the scheme as alleged falls within the reach of the fraud statutes, even if the fraud in *Kelerchian* was "close to the edge." *Id.* (quoting *Kelerchian*, 937 F.3d at 913).

example, that Mesner conspired to falsify the sanitation log-book to conceal Didion's failure to follow its sanitation schedule, that Didion's customers required Didion to maintain a food safety certification, and that obtaining and maintaining such certification required proof of compliance with Didion's sanitation program.

Crafting a facially sufficient indictment "is not a high hurdle." *Bates*, 96 F.3d at 970. Taking these allegations as true and viewing them in the light most favorable to the government, *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999), Count 1 easily overcomes it.[11]

### b. Evidence

Finally, we consider the sufficiency of the evidence introduced at trial. To convict for conspiracy to commit mail and wire fraud, the government needed to prove that Mesner conspired to (1) devise a scheme to defraud that involved a materially false statement or representation; (2) with an intent to defraud; and (3) used mails and wires in furtherance of his scheme. *See United States v. Powell*, 576 F.3d 482, 490 (7th Cir. 2009).

Mesner confines his arguments on appeal to materiality. He offers the same challenge to the evidence as he did to the

---

[11] To the extent Mesner contends that the government must allege (or prove) monetary loss, the plain text of the mail and wire fraud statutes and Supreme Court precedent all but foreclose his argument. The fraud statutes do "not so much as mention loss, let alone require it." *Kousisis*, 145 S. Ct. at 1391–92 (rejecting an economic-loss requirement under a fraudulent inducement theory); *see also United States v. Leahy*, 464 F.3d 773, 786–87 (7th Cir. 2006) (the wire and mail fraud "statutes do not require the government to prove … any loss" to the victim).

indictment: Didion's customers received what they paid for. In doing so, Mesner fixates on the government's failure to introduce contracts between Didion and its customers. But Mesner has provided our court with no law that requires the government to establish materiality via contractual terms—rather than, say, witness testimony or other documentary evidence. *Cf. United States v. Heon Seok Lee*, 937 F.3d 797, 809–10 (7th Cir. 2019) (concluding that information was material based in part on witness testimony).

The record here contains sufficient evidence from which a jury could reasonably conclude that Didion's customers did not receive what they bargained for. Multiple witnesses testified to the importance of Didion's compliance with its sanitation schedule. A representative from Anheuser-Busch, for example, testified that Anheuser-Busch "would stop shipments" from Didion if it learned Didion falsified its cleaning logs. A General Mills representative, too, testified that had she known about the falsified sanitation logbook, General Mills might have stopped purchasing Didion's products. And a third-party auditor testified that falsifying the sanitation logbook could have jeopardized Didion's food safety certification, which many food companies require of their business partners.

Mesner knew all of this. He told employees that addressing gaps in the sanitation logbook was of the "utmost importance" in anticipation of food safety certification audits and instructed them to "bring the [logbook] up to date" to prepare for a visit from Anheuser-Busch. In one email, Mesner admonished employees for "dropp[ing] the ball" on the sanitation logbook, which was "not acceptable" given Didion's upcoming visit from General Mills and "a surprise

audit from the Department of Ag[riculture] in which the [log-book] was not complete." Based on this and ample other evidence, a jury could reasonably find the accuracy of the sanitation logbook material to the bargain between Didion and its customers. *See id.* (characterizing a misrepresentation as "material" where witnesses testified that the representation was "extremely important" and that without it, the buyer "would not have purchased" the defendant's product).

Mesner has not overcome the "nearly insurmountable hurdle" to establish insufficiency of the evidence on Count 1, so we affirm. *Garcia*, 919 F.3d at 496.

### III. Conclusion

We AFFIRM the court's evidentiary rulings and jury instructions. We AFFIRM Clark's convictions and Mesner's conviction on Count 1. We VACATE Mesner's conviction on Count 4 and REMAND for an entry of judgment of acquittal on Count 4 and for further proceedings consistent with this opinion.